United State District Court
Southern District of Texas
**FILED**

**NOV 2 4 2015**

. **Clerk of Court**

United States District Court
Southern District of Texas
**ENTERED**
November 25, 2015
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| GILBERT LOPEZ<br>Movant | § § § § | |
| vs. | § § § | CIVIL ACTION NO. M-13-218<br><br>CRIMINAL NO. M-06-544-2 |
| UNITED STATES OF AMERICA<br>Respondent | § § § § | |

## REPORT & RECOMMENDATION

Movant, a federal prisoner proceeding pro se, filed this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (Dkt. Entry No. 1.)   This case was referred to the undersigned for report and recommendation.   Pending before the Court is Respondent's Opposed Motion to Dismiss.   (Dkt. Entry No. 11.)   Movant filed a reply to Respondent's motion (Dkt. Entry No. 14.)   This case is ripe for disposition on the record, and an evidentiary hearing is unnecessary.   *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (explaining that a district court may deny a § 2255 motion without first holding a hearing only if the evidence conclusively shows that the prisoner is not entitled to relief).

After careful review of the record and relevant law, the undersigned respectfully recommends that Respondent's Motion to Dismiss (Dkt. Entry No. 11) be **GRANTED** for the reasons explained in this Report, Movant's section 2255 motion be **DENIED** on the record for the reasons explained in this Report, the claims be **DISMISSED** with prejudice, and the case be closed.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and parties.   *See* 28 U.S.C. § 2255.

## II.  BACKGROUND

On March 19, 2007, Movant pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to possess, with intent to distribute, 1874 kilograms of marijuana and 468 kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).   (Crim. Dkt. Entry No. 284.)   Approximately four years later, on May 13, 2011, this Court sentenced Movant to a mandatory term of life imprisonment, as well as imposed a life term of supervised release and a $100.00 special assessment.[1]  (*Id.*) Movant filed a direct appeal, and the Fifth Circuit affirmed the criminal judgment.   (Crim. Dkt. Entry Nos. 293–94.)

Movant timely filed his § 2255 application on May 6, 2013.   (Dkt. Entry No. 1 at 9.)[2] *See United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (stating that a § 2255 motion is deemed filed at the time it is delivered to prison officials for mailing).

## III.  SUMMARY OF THE PLEADINGS

Movant proceeds pro se.   Pro se pleadings are held to less stringent standards than those drafted by attorneys.   *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).   Pleadings filed by a pro se litigant are entitled to a liberal construction.   *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dep't*, 84 F.3d 469, 473 n.16 (5th Cir. 1996)).

Consistent with Respondent's construction of Movant's claims, the undersigned construes Movant's pleadings to raise the following claims:

---

[1]   The Government had filed notice of prior convictions and enhancement of penalty to life in prison pursuant to 21 U.S.C. § 851.

[2]   Page numbers refer to the electronically-assigned (PDF) page numbers via CM-ECF.

**Claim 1:**   Counsel rendered ineffective assistance by failing to adequately advise and communicate with Movant about the consequences of pleading guilty; and,

**Claim 2:**   Counsel rendered ineffective assistance by filing a frivolous appeal.

(Dkt. Entry No. 1 at 5.)   Movant also filed a brief in support of his standardized § 2255 application, in which he provides a little more information about his claims.   (*See* Dkt. Entry No. 5.)   Also, Movant tendered three affidavits in support of his claims—one by Movant, one by his brother, and one by his mother.   (*See* Dkt. Entry Nos. 1; 5.)

In its Motion to Dismiss, Respondent argues that the claims lack merit and are undermined by the record.   (Dkt. Entry No. 11.)   Movant filed a reply.   (Dkt. Entry No. 14.) The undersigned will address Movant's reply as necessary in this Report, but the undersigned notes that the reply does not address Respondent's arguments in a very meaningful way.

## IV.   APPLICABLE LAW & ANALYSIS

### Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are appropriately raised for the first time in a section 2255 proceeding.   *Macer v. United States*, 538 U.S. 500, 504 (2003).   When a federal prisoner proceeds under § 2255 on constitutional grounds of ineffective assistance of counsel, the prisoner must satisfy the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   The prisoner must show that counsel's performance was deficient and that prejudice resulted from that deficiency.   *Id.* at 687.   The federal prisoner must demonstrate deficient performance and prejudice by a preponderance of the evidence.   *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

To demonstrate deficient performance under the first prong, the prisoner must show that counsel's representation fell below an objective standard of reasonableness.   *Strickland*, 466

3

U.S. at 687–88.   A court's scrutiny of counsel's performance is "highly deferential," and every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   *Id.* at 689.   There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.*

Under the second *Strickland* prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   A reasonable probability is "a probability sufficient to undermine confidence in the outcome."   *Id.* at 687.   As a general rule, prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error.   *See Glover v. United States*, 531 U.S. 198, 203–04 (2001).

Claims of ineffective assistance of counsel that affect the validity of the guilty plea are excluded from the general rule that constitutional defenses are forfeited by entry of a guilty plea. *United States v. Batamula*, 788 F.3d 166, 176 (5th Cir. 2015) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).   Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364–65, (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and also citing *Strickland*, 466 U.S. at 686).   *Strickland*'s two-part analysis applies to claims of ineffective assistance of counsel in this context.   *E.g., Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

A criminal defendant is entitled to effective assistance of counsel on direct appeal.   *Evitts v. Lucey*, 469 U.S. 387, 393–97 (1985); *Williams v. Collins*, 16 F.3d 626, 634–35 (5th Cir. 1994) (explaining that the due process clause of the fourteenth amendment guarantees effective

4

assistance of counsel for direct appeals).   Claims of ineffective assistance of appellate counsel are reviewed pursuant to *Strickland* and its progeny.   *See, e.g.*, *Williams*, 16 F.3d at 635 (explaining that claims of ineffective appellate counsel are reviewed under *Strickland*'s two-prong test). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.*

### Claim 1

In his first claim, Movant makes a number of allegations about counsel's performance with regard to the decision to plead guilty or proceed to trial.   According to Movant's factual allegations and averments, counsel knew Movant did not want to cooperate, yet counsel pushed him to plead guilty during the guilt-innocence phase.   (Dkt. Entry No. 5 at 1–2; 18–19.) According to Movant, the only plea that had been available to Movant was one "predicated upon his cooperation with the government." (*Id.* at 1.)   Repeatedly throughout his pleading, Movant states that counsel tried to convince Movant to cooperate.   (Dkt. Entry No. 5 at 1–2; 18–19.) Movant emphasizes that he made it clear to counsel that he rejected any possibility of cooperation and wanted to go to trial.   (*Id.*)   Movant states that, up until the very eve of trial, he acted consistently with his decision to proceed to trial.   (*Id.*)   On the eve of when the trial proceedings were set to begin, counsel and Movant learned that a co-defendant decided to plead guilty.   (*Id.*)   At this time, counsel explained to Movant that this development posed a problem

for Movant's case and "fundamentally altered the trial landscape," and, again, counsel advised him to plead guilty. (*Id.*)   Counsel assured Movant "he would work hard to get the least onerous sentence for a guilty plea, not once explaining" to Movant that the outcome of a non-cooperation guilty plea was a life sentence. (*Id.* at 2.)   Movant alleges that counsel "erroneously informed" him that "only a plea would enable him to be sentenced to a term less than life without cooperation, whereas a trial would irrevocably subject him to a lifetime sentence." (*Id*).   "Putting full faith and trust in the advice of his attorney, [Movant] agreed to change his plea." (*Id.*)

Movant then proceeds to pick apart the re-arraignment transcript to explain how certain statements during the Rule 11 colloquy, if one follows his reading of them, further added to his confusion and failed to clarify his understanding of the sentence he would face by entering a guilty plea. (*Id.* at 2–3.)   In a nutshell, Movant seems to argue that the Rule 11 admonishments were confusing and ambiguous.   Movant states that counsel told him to just "agree" with everything the Court said at re-arraignment. (*Id.* at 19, ¶ 10.)

Then, another four years passed before Movant was sentenced. (*Id.* at 4.)   During this time, Movant alleges that counsel told him he needed the extra time to try to get the sentence as low as possible. (*Id.*)   Movant alleges that, in reality, the only hope for a lower sentence was a 5K departure, and counsel was hoping Movant would change his mind. (*Id.*)   Movant complains that counsel had no right to make that decision for Movant. (*Id.*)   It was not until the sentence was imposed that Movant fully realized the life sentence was unavoidable. (*Id.*)

In support, Movant has attached affidavits from his brother and mother, which the undersigned observes are nearly identical to each other in form and substance. (*Id.* at 14–17.)   Movant also included his own affidavit. (*Id.* at 18–19.)   Movant asserts that the affidavits

show how surprised everyone was with the result.   (*Id.* at 4.)   Movant alleges that "when

confronted" about the result (the life sentence), counsel "continued to dissemble, and informed

them that the sentence could be reduced by the appellate court [though] the claim had no basis in

reality."   (*Id.*)   Movant makes similar averments in his own affidavit.   (*Id.* at 18–20.)

Pursuant to this Court's order, former counsel tendered an affidavit addressing Movant's

allegations.   (Dkt. Entry No. 9.)   Counsel indicates the nature and frequency of the advice he

gave Movant, as well as imparted to Movant's family.   Counsel explains why the decision was

made to plead guilty, rather than proceed to trial, and counsel indicates that Movant refused to

cooperate to lessen his sentence.   Counsel explains that Movant was aware of the consequences

of entering the guilty plea.

In his reply to the motion to dismiss, Movant adjusts his argument or theory a bit by

claiming that counsel usurped Movant's ability to make the final decision whether to plead guilty

or proceed to trial by convincing Movant to plead guilty with the hope that Movant would

change his mind about cooperating.   (Dkt. Entry No. 14 at 1–2.)   Movant then argues that he

and his family were under the impression, based on counsel's advice, that a sentence reduction

by direct appeal was the only chance that existed, but only if Movant pleaded guilty.   (*Id.* at 2.)

The undersigned finds that Movant's first claim lacks merit.   Movant's allegations are

not consistent with and find no support in the existing record.   The record reflects not only what

actually occurred, but it also supports a number of reasonable inferences.   *See, e.g.*, *Missionary*

*Baptist Found. of Am., Inc. v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983) ("A court may take

judicial notice of the record in prior related proceedings, and draw reasonable inferences

therefrom.").   The undersigned finds that the record is consistent with counsel's affidavit, unlike

Movant's, when viewed against the entirety of the record and considering this Court's understanding of the case, counsel's level of experience, and counsel's extensive criminal practice before this Court. *See United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013) (remanding for an evidentiary hearing where the prisoner alleged that counsel erroneously predicted a particular sentence if the prisoner elected to go to trial and, in reaching this outcome, finding that the prisoner's allegations were "not speculative or conclusory" and *observing that the United States had not obtained an affidavit from former counsel to lend insight*) (emphasis added); *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (explaining that contested fact issues in a section 2255 proceeding ordinarily may not be decided by affidavits alone, *unless* the affidavits are supported by other evidence in the record);   *see also United States v. Arledge*, No. 13-60020, 597 F. App'x 757, 759 (5th Cir. Jan. 15, 2015) (unpublished) (citing *United States v. Reed*, 719 F.3d at 374, among other cases, in support of its various propositions) (explaining that when there are "dueling affidavits," from a prisoner and counsel for example, a *"district court . . . can use its own knowledge of the record, its observations from trial, its prior experience with the parties and counsel, and clear contradictions between an affidavit and other record documents to determine whether the § 2255 movant is entitled to 'no relief' "*) (emphasis added);   *United States v. Pena-Garavito*, No. 12–50477, 539 F. App'x 506, 507 (5th Cir. Sept. 14, 2013) (unpublished) (noting that *"nothing in the record outside of counsel's affidavit* directly refutes" the defendant's declarations) (emphasis added).   Finally, the undersigned concludes that Movant's affidavits do not provide, nor amount to, independent indicia of reliability in support of his allegations. *Cf. United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (explaining that a defendant may need to produce "independent indicia of the likely merit" of his allegations to be entitled to an evidentiary hearing on an issue such as counsel promising a particular sentence).

The record reflects that shortly before final pretrial, counsel moved for a continuance, which was granted.   Counsel wrote the following in the motion:

> Counsel for Defendant and the Government have been negotiating to enter into a plea bargain agreement in this matter. The negotiations have not met with fruition because of a restriction on the Prosecution Assistant U.S. Attorney's ability to withdraw the enhancement which would mandate a life sentence for Defendant. The United States Attorney and or Senior Assistant U.S. Attorneys located in Houston, Texas have the authority to engage in negotiations which would likely resolve this matter with a plea bargain agreement.
> (Crim. Dkt Entry No. 108.)

On the day of re-arraignment, this exchange between the Court, counsel, and the government occurred before the plea was taken:

| THE COURT: | Okay, these are both going to be please (sic), Mr. Chapa? |
| MR. CHAPA: | Mr. Lopez would like to plead, your Honor. |
| THE COURT: | To a mandatory life sentence, or did that -- did you all work something out? |
| MR. CHAPA: | No, the same thing, your Honor, but it's -- it will be explained to the Court. |
| THE COURT: | Okay. Let me pull up my document here and I'll call the case in a second. |
| MR. CHAPA: | Judge, if I may, that's no -- through no fault of Mr. Lopez, he's been willing to plead since day one, that was partially my doing and just the situation. |
| THE COURT: | Okay, let me call the case. 17 06-CR-544-2, *USA versus Gilberto Lopez.* |
| MR. ALANIZ: | The Government is present and ready. |
| MR. CHAPA: | Mr. Lopez is ready to plead, your Honor. |

9

| | |
|---|---|
| **THE COURT:** | And so let me just see if I understand this. He's going to plead, because of the enhancements he is going to plead to a mandatory life sentence. |
| **MR. CHAPA:** | Correct, your Honor. |
| **THE COURT:** | And if he had gone to trial and lost he would receive no worse than a mandatory life sentence. |
| **MR. CHAPA:** | That's right, your Honor. |
| **THE COURT:** | And if you went to trial and won, of course then he would -- |
| **MR. CHAPA:** | He walks. |
| **THE COURT:** | -- walks on this case. I don't know what else is out there. And so I'm having difficulty understanding why -- |
| **MR. ALANIZ:** | The incentive, Judge, is that I proposed to defense counsel's client is (indiscernible) -- well, first of all, we believe that there are other unindicted co-conspirators are out there that are involved in this particular drug transaction. I've told Mr. Chapa that if Mr. Lopez comes in and debriefs truthfully, I believe he's got an opportunity to maybe earn himself a 5(k). Furthermore, what I explained to counsel and to tell his client that if he went to trial the chances of the government working with him for a 5(k) would be zero. We're not going to work with him if he does that.

So based on that he's pleading guilty, if he comes in and debriefs we're willing to work with him and hopefully recommend giving him a 5(k) and maybe indicting other coconspirators. |
| **THE COURT:** | Okay. |
| **MR. CHAPA:** | And adding on to that, your Honor, I know this case. Lord knows I know this case. And I've been to trial before, Judge, and the chances of this boy walking -- |
| **THE COURT:** | Are remote. But -- |
| **MR. CHAPA:** | Yeah. |

| | |
|---|---|
| **THE COURT:** | -- again, we've all been surprised. I think -- |
| **MR. CHAPA:** | You're right, Judge -- |
| **THE COURT:** | -- in this courtroom -- |
| **MR. CHAPA:** | -- I mean you can open 12 hearts and 12 minds, and I understand that. |
| **THE COURT:** | But, again, if he knows and you know, I assume from talking to your client, whether he has a great likelihood of actually earning that 5(k), and I presume that that's the reason why he's elected -- |
| **MR. CHAPA:** | That's correct. |
| **THE COURT:** | -- not to go to trial. |
| **MR. CHAPA:** | That's correct. |
| **THE COURT:** | Okay. Any objection about taking his plea together with that of the co-defendant? |
| **MR. CHAPA:** | No objection whatsoever, your Honor. |

(Crim. Dkt. Entry No. 220 at 3–5.)

The statements by the Court, counsel, and the prosecutor undermine, rather than support, Movant's direct or indirect allegations that he was unaware of or misadvised about the consequences of his decision and the sentence he was facing or that counsel told Movant a lower sentence could be achieved through anything other than cooperation.   Not only does this record show that counsel was actively engaged in negotiations with the Government, but it reflects that counsel was well-aware in the pre-trial phase of the sentence Movant faced if he pleaded guilty.   Movant wants to convince the Court that, while he and counsel may have discussed pleading guilty, counsel failed to communicate the part about the "life sentence" to his client or somehow misrepresented it, if Movant pleaded guilty without cooperating, but that is

11

unlikely in light of this record.   Counsel's averments that he met with Movant regularly, that they thoroughly discussed the pros and cons of a guilty plea, and that Movant made the decision to plead guilty with full knowledge of the consequences are consistent with the forgoing excerpts from the record.

Some of Movant's allegations are completely contradicted by the record.   For example, Movant alleges in his memorandum that "all discussions between the parties before the morning of the plea were predicated on trial."   (Dkt. Entry No. 5 at 6)   However, as already noted, the pleadings and transcripts in the criminal case reflect that there were on-going plea discussions in Movant's case.   To say otherwise is disingenuous.

Notwithstanding Movant's break down and cramped reading of the re-arraignment transcript, it reflects that Movant was advised of the maximum and minimum penalty he faced, and Movant assured the Court that he was satisfied with his representation and counsel's advice. (Crim. Dkt. Entry No. 220 at 9–10; 15.)   *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (stating that "[s]olemn declarations in open court carry a strong presumption of verity" and indicating that the representations made by the defendant at a plea hearing, as well as the findings made by the trial judge accepting the plea, constitute a formidable barrier to any subsequent collateral attacks).   The Rule 11 colloquy and the entire transcript from the day of re-arraignment undermine Movant's allegations that he was strong-armed into pleading guilty by counsel, that Movant simply "went through the motions" of pleading guilty, and that he was unaware of some or all of the consequences of pleading guilty in the manner he did.

The affidavits Movant offers from family members do not provide particularly compelling or direct support for his allegations that he, Movant, had no idea he was facing a life

sentence if he pleaded guilty without cooperating or thought he faced a lesser sentence—all due to counsel's failure to explain the sentence or possible misrepresentation of it. *See, e.g.*, *Cervantes*, 132 F.3d at 1110 (explaining that (1) to be entitled to § 2255 relief on a claim of an unkept promise in the context of a guilty plea, the movant must prove that an actual promise was made by showing the exact terms of the alleged promise, exactly when, where, and by whom such a promise was made, and the precise identity of any eyewitness to the promise and that (2) the defendant needs to produce "independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties," to be entitled to an evidentiary hearing on the issue). The undersigned finds that Movant's and the family members' affidavits are vague, if not elusive, and the family members' affidavits are not particularly probative of what *Movant* knew or was advised of by counsel. This is particularly so when one considers that Movant is alleging in part that the decision to plead guilty occurred on the eve of trial due to changed circumstances, which tends to undermine the relevance of the family members' understanding of the case up until that point. Further, the family members' affidavits are nearly identical to each other and do not amount to reliable or independent indicia of the likelihood of the merits of Movant's claims.

The record from the sentencing phase is inconsistent with and does not support Movant's allegations. Movant pleaded guilty on March 19, 2007, and, as Movant acknowledges, sentencing was held four years later, on May 13, 2011. The record supports the conclusion that the Court granted continuances and rescheduled the sentencing so that Movant would have an opportunity to cooperate for sentencing relief. At sentencing, Movant told the Court that he had the opportunity to review the PSR, that he had no questions about the PSR that his lawyer could

not answer, and that the PSR was accurate.  (Sentencing Tr. 3–4.)   At sentencing, the Court

stated:

| | |
|---|---|
| **THE COURT:** | I don't know that it's worth noting, but I will note that Mr. Lopez had the opportunity to earn a sealed motion and declined. He could have cooperated and testified—— |
| **MR. CHAPA:** | And still could, your Honor, because he's got a year to do it. |
| **THE COURT:** | Right, he still could. |
| **MR. CHAPA:** | And he knows that, Judge. And he's been apprised of it and advised of it. |

(Crim. Dkt. Entry No. 287 at 10– 11.)

The Court also stated the following:

I'll be as lenient as I can, which I, as you know, the law is what the law is. I will, I guess the one encouraging thing is, which I know you knew earlier and I'm really surprised you didn't take the opportunity or advantage of it. But you can get a reduction in this sentence if you substantially assist the Government.

I have complete discretion what to do in your case. I don't have to take just whatever the Government recommends. So, anyway, you'll have up to a year now to try and do that. Again, you had the opportunity at Mr. Orozco's trial. I was very, very surprised when you didn't do that.   But in any event, I just wanted to remind you that you do have that opportunity so that you can have some hope out there that you're not going to just die in a prison.

(Crim. Dkt. Entry No. 287 at 11.)   The record is consistent with averments made in counsel's

responsive affidavit:

I repeatedly explained to Mr. Lopez his only hope of ever breathing free again was to cooperate with the government. To afford him every opportunity to do so, and with his consent, I repeatedly delayed his sentencing to afford him more time. He knew he was facing life and chose not to cooperate.

(Dkt. Entry No. 9.)   Counsel's averments are consistent with the explanation made at the

re-arraignment that the "incentive" for Movant to plead guilty, instead of proceed to trial, was the

14

possibility of the 5K, which the government said would be unavailable to Movant, in all likelihood, if he proceeded to trial.   Not only do the foregoing excerpts highlight the implausibility of and lack of record support for Movant's allegations in general, but they also undermine his more specific claim that he (and his family) somehow remained in a state of sheltered, uninformed cluelessness about Movant's "true" sentencing exposure for *four years*, beginning around the time of the re-arraignment and continuing until the very moment the sentence was imposed, and that Movant was strung along during that time by counsel's deceit, such as counsel telling Movant he needed all that extra time so he could secure the lowest possible sentence for Movant.

What the Court is left with at this point are Movant's unsupported, bald allegations, which, as just explained, are inconsistent with the record and the time-line of the case.   *Cf. Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's *bald assertions on a critical issue* in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").   Movant's whole theory of relief lacks a certain level of plausibility.   On the one hand, Movant freely admits that he knew before trial that any "plea bargain" with the government trial would require cooperation, to which he says he was adamantly opposed.   On the other hand, and despite admitting that he discussed *one type* of guilty plea arrangement with counsel, Movant wants the Court to believe that counsel never explained to him (and Movant *never asked*), prior to trial, what his sentencing exposure would be if he pleaded guilty under a "non-cooperation" plea scenario.   Then, on the day jury selection was set to begin, counsel suddenly explained to Movant, in light of a co-defendant pleading guilty, "that only a plea would enable him to be sentenced to a term less than life without cooperation, whereas a trial would

irrevocably subject him to a lifetime sentence." (Dkt. Entry No. 5 at 2.) It seems highly improbable that the topic of Movant's sentencing exposure under a "non-cooperation" guilty plea *never ever* came up prior to the first day of the trial proceedings or that Movant never asked about that option.

There are other relevant instances in the record that serve to undermine the plausibility of Movant's current allegations. First, the undersigned observes that the sole reason Movant provides for refusing to cooperate is fairly contrived, which does not add to the strength of his allegations as a whole: "I clearly explained to Mr. Chapa that I had no intention to enter into a cooperation plea *as I would not seek to gain advantage through the misery of others.*" (Dkt. Entry No. 5 at 18.) Second, the undersigned observes that there was an *unusual* four-year break between Movant's re-arraignment and sentencing, which, in light of this Court's understanding of the case and the way sentencing proceedings occur in general, makes Movant's allegations of some type of continuing, unabated ineffectiveness by counsel (and any suggestion that Movant was a snookered victim languishing in jail for four years because of counsel's bad advice and continuing deceit) appear quite dubious. Third, the undersigned points out that Movant is not particularly consistent about what alleged error by counsel persuaded Movant to plead guilty or contributed to the decision to plead guilty. (*See* Dkt. Entry Nos. 5; 14.) That is, Movant seems to argue that it was counsel's failure to explain certain things, yet he suggests at the same time that it was counsel's purported misrepresentations about how Movant could reduce his sentence, such as on appeal, that persuaded Movant to plead guilty. Lastly, the undersigned observes that Movant elected to have retained trial counsel handle his direct appeal—a course of conduct by Movant that is not consistent with someone who, according to Movant, had just

16

discovered at sentencing—to his complete dismay—that his attorney misadvised him about the sentencing exposure of his guilty plea and lied to him to boot.[3]

To the extent Movant claims that counsel told Movant that an appeal was the only way to get his sentence reduced—implying that this informed his decision to forego a trial—Movant's averment and the affidavits from his family members reflect that counsel told them this when they confronted counsel *after* sentencing, so it could not have had any impact on Movant's decision to plead guilty.   (Dkt. Entry No. 5 at 15; 17; 19.)

The undersigned also finds that Movant cannot show that counsel's advice to plead guilty was deficient.   Counsel's advice to plead guilty left an opportunity for Movant to try to qualify for a sentencing reduction through cooperation.   By all appearances and according to the re-arraignment transcript, Movant's chances of succeeding at trial were remote, and one can infer from this (and the record as a whole, including counsel's affidavit) that the evidence against Movant was quite strong, at least in counsel's professional opinion.   Had Movant gone to trial and lost, he would concomitantly lose the opportunity to qualify for a 5K.   In light of this record (and keeping in mind there is no evidence or indication that counsel failed to adequately or properly explain Movant's sentencing exposure to him), there is no support for the conclusion that counsel's advice to plead guilty, even through cooperation, fell below an objective standard of reasonableness.   It is not sufficient for Movant to claim merely that, because counsel knew Movant would *never ever* agree to cooperate, counsel should have advised Movant to proceed to

---

[3]   Movant attempts to "counteract" this fact by tendering a letter he claims he sent to counsel after sentencing.   (Dkt. Entry No. 5 at 21.)   Movant complains in the letter to counsel that no one told him about the statutory enhancement, among other complaints.   Even if Movant wrote and actually sent this letter to counsel, it fails to call into question Movant's actual conduct—which was to continue with trial counsel on direct appeal.

trial.   At that end of the day, the record reflects that counsel did not believe the case would be easy, let alone winnable, if it proceeded to a jury trial and that counsel's advice to Movant was informed largely by the length of the sentence Movant was facing (in either scenario) and a desire to secure an "escape hatch" to the life sentence (Movant's distaste for cooperation notwithstanding).   Again, Movant fails to demonstrate anything deficient about this advice by counsel.   *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (reiterating that, under *Strickland*, "[c]ounsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy") (citations omitted).

If Movant was persuaded by counsel's competent, complete advice and agreed to plead guilty after consulting with counsel—*even if* Movant had to consider and make a decision right around the time the trial was set to begin because the circumstances changed when the co-defendant decided to plead guilty—that does not mean counsel overrode in any way, shape, or form Movant's choice in the matter or otherwise tainted the validity of Movant's guilty plea. Additionally, Movant's allegation that he somehow forfeited his choice in the matter is contradicted by the record.   For example, Movant's conclusory allegation that counsel usurped or overrode Movant's choice is not sufficient to overcome the presumed truthfulness of his statements to the Court at re-arraignment, which included telling the Court that no one was forcing him to plead guilty, and the Court's findings regarding the validity of Movant's guilty plea.   (*See, e.g.,* Crim. Dkt. Entry No. 220 at 19.)

Finally, the undersigned concludes that there is no indication that Movant was prejudiced. *E.g, United States v. Cavitt*, 550 F.3d 430, 441–42 (5th Cir. 2008) (citing and quoting *Bond v.*

*Dretke*, 384 F.3d 166, 167–68 (5th Cir. 2004), and citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) ("In order '[t]o prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"). Movant's theory of prejudice is conclusory and speculative and rests on shaky or unsubstantiated assumptions (1) that Movant would never ever cooperate *because it offends his personal value system* (which is what he alleges); (2) that, as a technical matter, Movant faced the same sentence no matter which route he took, so the *only* logical, evident choice for a defendant in his shoes would be to "roll the dice" (Movant's words) and proceed to trial; and, (3) that there were no other meaningful reasons why Movant would want to plead guilty instead of proceeding to trial. The record does not support these assumptions or this theory of prejudice.   Instead, the record gives every indication that Movant made a counseled and informed decision to plead guilty, at a minimum, based on a number of identifiable considerations, such as the co-defendants pleading guilty, the evidence, and Movant's withering chances of succeeding at trial, as well as to preserve the opportunity to obtain sentencing relief at a later date, in the event he changed his mind about cooperating.   The record reflects that Movant was admonished at the re-arraignment that he faced a maximum term of life in prison, and this record is inconsistent with Movant's assertion that he was somehow blind-sided and prejudiced to the degree alleged.   Movant's claim that he would have proceeded to trial, but for counsel's failures, is too conclusory to begin to demonstrate prejudice, *see Strickland*, 466 U.S. at 693 (stating that the defendant must affirmatively prove prejudice), and Movant has had multiple opportunities to allege or provide "something more" to describe or substantiate how *precisely* he was prejudiced—but all he

supplies is a conclusory "but for" type of statement, such as in his personal affidavit (and in the other affidavits).   (*See* Dkt. Entry No. 5 at 20, ¶ 16.)

In summary, Movant's first claim lacks merit because he fails to show deficient performance or prejudice.   Movant's claim and allegations are not consistent with—and at times are contradicted by—the record and the time-line of the criminal case.   Movant fails to call into question the reliability of the record, the presumption that counsel performed effectively, or the presumed truthfulness of Movant's own in-court statements with any of his affidavits or allegations.   Instead, of all the affidavits available in this collateral case, counsel's affidavit is the one that is consistent with the record.   In light of the record as a whole, there is no need for an evidentiary hearing, and the claim is proper for disposition on the record.   This claim should be denied and dismissed.

### Claim 2

For his second claim, Movant alleges that counsel, also Mr. Chapa, was ineffective on direct appeal.   Movant complains that counsel filed an appellate brief "to dispute a point of law long established in this and every other circuit in the nation, namely, that the imposition of a life sentence was in contravention of the Eighth Amendment prohibition against cruel and unusual punishment," and that the Fifth Circuit pointed out that the argument was foreclosed by 20 years of precedent.   (Dkt. Entry No. 5 at 4.)

The undersigned agrees with Respondent.   This claim is too conclusory to merit relief. *See, e.g., See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (explaining that courts construe pro se § 2255 petitions liberally, but, "[a]t the same time . . . mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue");   *Green v. Johnson*, 160 F.3d

1029, 1042 (5th Cir. 1998) (stating that mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Ross*, 694 F.2d at 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's *bald assertions on a critical issue* in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").    Also, Movant cannot show deficient performance and prejudice in his case simply because an argument raised on appeal is foreclosed by precedent and, therefore, results in an appellate court affirming the criminal judgment.   It is worth noting that raising foreclosed arguments on appeal is not a particularly unusual occurrence.  *See, e.g, United States v. Pineda-Arrellano*, 492 F.3d 624, 625 (5th Cir. 2007) (noting that there have been hundreds, if not thousands, of cases in this circuit in which counsel have raised a constitutional challenge to 8 U.S.C. §1326(b) based on the reasoning of *Apprendi*, even though the argument is foreclosed under precedent).   Further, the Fifth Circuit's decision reflects that, on appeal, counsel argued more than what Movant alleges. Counsel argued that the "sentence violates the Fifth and Eighth Amendments to the Constitution, as well as the Constitution's delegation of authority to the judiciary in Article III, Section 1." *United States v. Lopez*, 459 F. App'x 488, 489 (5th Cir. 2012).   All the arguments were foreclosed, according to the Fifth Circuit's decision, but that does not mean counsel performed deficiently. *See Smith*, 528 U.S. at 288 (explaining that while it is possible to bring a *Strickland* claim based on appellate counsel's failure to raise a particular claim, it is difficult to demonstrate that counsel performed incompetently).   Movant fails to explain in his original pleadings or in his reply how he was prejudiced.   Movant's personal belief that the appeal was frivolous is not a sufficient basis on which to demonstrate that counsel performed deficiently or prejudicially on direct appeal.[4]   In

---

[4]   According to counsel's affidavit, after the Court stated at the sentencing hearing that it

his reply brief, Movant does not address the conclusory nature of this claim, which was the precise issue Respondent identified and argued in its motion to dismiss (Dkt. Entry No. 10 at 12). Movant fails to show that counsel rendered ineffective assistance on direct appeal, and this claim should be denied and dismissed.

## V.   CONCLUSION

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned respectfully recommends that Respondent's Motion to Dismiss (Dkt. Entry No. 11) be **GRANTED** for the reasons explained in this Report, Movant's section 2255 motion be **DENIED** on the record for the reasons explained in this Report, the claims be **DISMISSED** with prejudice, and the case be closed.

Finally, the undersigned respectfully recommends that the District Court deny a Certificate of Appealability upon issuance of its final order in this section 2255 proceeding because the record supports the conclusion that Movant fails to show that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)).

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this

---

thought Movant's life sentence was excessive (the Court also stated it was obliged to follow the law), Movant wanted to pursue the appeal, even though counsel explained to him that it was highly unlikely the Fifth Circuit would consider overturning the sentence. (Dkt. Entry No. 9.)

case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 24th day of November, 2015.

_____
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE